

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

## No. 08-26-00001-CV

---

### In re Bruce Wheatley in his Capacity as Executor of the
### Estate of Judith T. Wheatley, deceased, and Tony Aguilar, Relators

---

**AN ORIGINAL PROCEEDING IN MANDAMUS**

---

## MEMORANDUM OPINION

Relators Bruce Wheatley and Tony Aguilar seek a writ of mandamus directing the probate court to withdraw its October 30, 2025 order disqualifying Aguilar from representing the estate of Judith (Judy) Wheatley. Relators raise five issues challenging the disqualification on various grounds. We deny the petition.

### I. BACKGROUND

We detailed the background of this case in our first opinion, *Wheatley v. Farley*, 610 S.W.3d 511 (Tex. App.—El Paso 2020, pet. denied). The dispute concerns ownership of the Poki Roni Ranch, a 10-acre horse ranch in El Paso's lower valley that offered horse boarding, horsemanship events, and pony rides. In 2011, Travis Kirchner executed six warranty deeds conveying the

property to Judy Wheatley. Both of them died before the deeds were discovered among Judy's personal possessions in 2017. Bruce Wheatley, as executor of Judy's estate, sued to recover the property; Travis's estate sought a declaratory judgment that the deeds were never delivered and were void. *Id.* at 512. At trial, the probate court granted a directed verdict for the administrator of Travis's estate on the ground that there was no evidence of delivery. *Id*. at 511, 512.

On appeal, we reversed and held that the evidence at trial raised an issue of fact concerning the delivery of the deeds. *Id.* at 518. We explained that only two witnesses had testified and both denied knowing how the deeds ended up in Judy's possession. *Id.* at 517. In support of the existence of a fact question, we pointed to the close, platonic relationship between Judy and Travis, her caretaking of the Poki Roni Ranch in his absence, his inconsistent actions after executing the deeds, and the circumstances of the discovery of the deeds among Judy's personal effects. *Id.* at 518, 520. Relators subsequently brought a series of mandamus proceedings, in which they re-argued their position that a fact issue no longer exists and that they are now entitled to immediate possession of the Poki Roni Ranch. *See In re Wheatley*, No. 08-23-00147-CV, 2023 WL 4041895 (Tex. App.—El Paso June 15, 2023, orig. proceeding) (mem. op.); *In re Wheatley*, No. 08-23-00220-CV, 2023 WL 5486238, at *1 (Tex. App.—El Paso Aug. 23, 2023, no pet.). In our latest opinion denying mandamus, we explained that "[a]t the heart of the dispute is Relator's position that our opinion in *Farley* awarded the disputed real property" to Judy's estate. 2023 WL 5486238, at *1. We reiterated our first opinion at length and denied the petition. *Id.*

In this third petition, in connection with Aguilar's disqualification based on his status as an essential fact witness, Relators offer Aguilar's deposition testimony regarding subsequent developments. Aguilar was deposed in court on December 13, 2024. He testified as to personal knowledge of several facts not mentioned at trial but nonetheless related to the dispute about the

2

delivery of the deeds. He also testified that the holding in our prior opinion was that "the deeds had been delivered" based on a presumption that deeds in Judy's possession were delivered to her. He also remarked that "the Eighth Court of Appeals' opinion is just dictum." Relators argue that Aguilar's testimony establishes conclusively that the deeds were delivered and that trial must be limited to interpretation of the warranty provisions of the deeds. We disagree and conclude that Aguilar's testimony does not affect our prior determination that a fact issue exists and that Aguilar is an essential fact witness. *Farley*, 610 S.W.3d at 518.

In our prior opinion, we determined that Judy's estate had produced sufficient evidence to trigger a rebuttable presumption of delivery of the deeds to Judy. Specifically, Travis's administrator admitted the deeds were found among Judy's possessions. *Id.*; *see Gonzales v. Adoue*, 58 S.W. 951, 953 (1900) ("If a deed duly executed be found in the possession of the grantee, the delivery by the grantor and acceptance by the grantee will be presumed, subject, however, to be disputed."). The effect of that presumption was to shift the burden to Travis's estate to produce evidence supporting a finding of non-delivery. *Armstrong v. West Texas Rig Co.*, 339 S.W.2d 69, 74 (Tex. App.—El Paso 1960, writ ref'd n.r.e.). We next determined that Travis's estate produced some evidence of non-delivery sufficient to raise a fact issue. *Farley*, 610 S.W.3d at 518; *see Gen. Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex. 1993) (explaining that when evidence contradicting a presumption is offered, the presumption "disappears" and all evidence on the issue is evaluated "as it would be in any other case"). Specifically, Travis's administrator testified that Judy's personal property had become intermingled with Travis's when she moved to a house on the Poki Roni Ranch. *Id.* Yet, in support of a fact issue, the person who found the deeds did not testify, and the record did not indicate, whether the deeds were found among Judy's papers,

3

specifically, or among Travis's papers that had later become intermingled with Judy's papers. *Id.* at 517.

The record has since been supplemented. Aguilar testified in his deposition that following Judy's death, Relator Bruce Wheatley, who acted as the executor of her estate, boxed up Judy's papers and delivered them to Aguilar, who found the deeds among them and thereafter recorded them. Aguilar explained that, during the discovery phase of a lawsuit involving property adjacent to the Poki Roni Ranch and a road leading into it, while he represented *both* Travis and Judy, he found the deeds. Aguilar testified that Travis had told him that he had given the Poki Roni Ranch to Judy and then instructed Aguilar not to allege in the suit that it was Travis's homestead. Aguilar acknowledged that these statements were privileged as attorney-client communication and requested a waiver from opposing counsel. In addition, Aguilar testified that he had obtained a one-third interest in the Poki Roni Ranch for himself. He had Bruce Wheatley, as executor, deed the property to Aguilar and Judy's two daughters, Lianna and Tanya Wheatley. Aguilar acknowledged that he did so for the purpose of making himself an indispensable party so that he could testify about his conversations with Travis.

Based on Aguilar's deposition testimony, Real Party in Interest Lou Pereira, the successor administrator of Travis's estate, moved to disqualify Aguilar on grounds that his representation of Judy's estate against Travis's estate presented a conflict of interest and that Aguilar was likely to be a witness at trial. A hearing was held on July 2, 2025. At the hearing, the associate judge asked Aguilar whether his testimony on his discovery of the deeds would be adverse to Travis's estate, given that Travis was a former client. Aguilar responded that it was not because Travis had given Judy a power of attorney that she could have used to convey the property to herself even if he had not executed the deeds. When asked whether Judy would have breached her fiduciary duty to

4

Travis by conveying the property to herself, Aguilar responded only that "that isn't what happened." In addition, the court expressed concern that Aguilar would be a witness and that allowing him to both testify and serve as Wheatley's trial counsel would prejudice Travis's estate. The court granted the motion to disqualify, addressing Aguilar directly from the bench: "I'm not concerned at all with you being in the case, Mr. Aguilar. And that's not my goal to eliminate you from the case." Aguilar stated that he reserved the right to interplead, and the court responded, "[a]bsolutely," but clarified, "I think pro se means you can only represent yourself." An amended disqualification order was entered on October 30, 2025. This original proceeding followed.

## II. ISSUES PRESENTED

Relators present five issues: (1) whether the probate court erred in disqualifying Aguilar when his testimony allegedly concerns undisputed matters supported by the written warranty deeds; (2) whether Aguilar may be disqualified when he is a necessary party who can appear pro se; (3) whether any testimony elicited from Aguilar was invited by Pereira; (4) whether Aguilar's twelve-year representation of the Wheatley estate in this matter weighs against disqualification; and (5) whether the resulting economic hardship on the estate renders the disqualification an abuse of discretion. Pereira restates these as a single issue: whether the probate court abused its discretion in disqualifying Aguilar from representing Wheatley. Because each of Relators' issues challenges the same disqualification order under the same mandamus standard, we address them together under a single analytical framework and discuss each sub-issue in turn.

## III. MANDAMUS RELIEF

### A. Standard of review

Mandamus relief is an extraordinary remedy that requires the relator to show (1) the trial court clearly abused its discretion, and (2) the relator lacks an adequate remedy by appeal. *In re*

*Kappmeyer*, 668 S.W.3d 651, 654 (Tex. 2023) (orig. proceeding). "A trial court abuses its discretion if it acts with disregard of guiding rules or principles or in an arbitrary or unreasonable manner" or "fail[s] to analyze or apply the law correctly." *Id.* at 655. Regarding whether there exists an adequate remedy by appeal, mandamus is recognized as the proper vehicle for challenging a disqualification order. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 383 (Tex. 2005) (orig. proceeding). Because only the first requirement is at issue, we focus solely on whether Relators' petition estblished a clear abuse of discretion by the trial court's disqualification of Aguilar from representing the Wheatley's estate.

### B. Applicable law

Texas courts recognize disqualification of counsel as a "severe remedy" because of the "immediate and palpable harm" it causes both to the proceedings and to a party's right to have counsel of their choice. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding). Courts must therefore "adhere to an exacting standard when considering motions to disqualify so as to discourage their use as a dilatory tactic." *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990). Courts look to the Texas Disciplinary Rules of Professional Conduct in evaluating whether disqualification is warranted. *In re Meador*, 968 S.W.2d 346, 350 (Tex. 1998) (orig. proceeding). Mere allegations of unethical conduct or evidence showing only a remote possibility of a violation of the disciplinary rules are not sufficient to justify disqualification of counsel. *Spears*, 797 S.W.2d at 656.

### (1) The Advocate-Witness Rule — Rule 3.08

The Texas Disciplinary Rules provide that, subject to certain exceptions, an attorney may not represent a party in an adjudicatory proceeding if the attorney knows or believes that he or she may be a witness at trial. *Anderson Producing, Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 418 (Tex.

6

1996); Tex. Disciplinary Rules Prof'l Conduct R. 3.08, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A. Rule 3.08(a) applies when the attorney's testimony is "necessary to establish an essential fact on behalf of the lawyer's client." Rule 3.08(b) applies when the attorney's testimony "will be substantially adverse to the lawyer's client[.]" The rule in both cases is grounded in the concern that an attorney performing dual roles as witness and advocate can unfairly prejudice the opposing party, because it may not be clear whether a statement by an advocate-witness should be taken as proof or as commentary on the proof. Tex. Disciplinary Rules Prof'l Conduct R. 3.08 cmt. 4. Allowing an attorney to serve in both capacities "puts the attorney-witness in the unseemly position of arguing his own credibility." *Warrilow v. Norrell*, 791 S.W.2d 515, 522 (Tex. App.—Corpus Christi 1989, writ denied).

The mere fact that a lawyer serves as both advocate and witness does not, by itself, compel disqualification. *Ayres v. Canales*, 790 S.W.2d 554, 558 (Tex. 1990). Disqualification is appropriate only when the lawyer's testimony is "necessary to establish an essential fact." *In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004) (orig. proceeding). The party requesting disqualification must show that the opposing lawyer's dual roles will cause the party actual prejudice. *Ayres*, 790 S.W.2d at 558. Rule 3.08(a)(4) also provides an exception permitting continued representation when "the lawyer is a party to the action and is appearing pro se." Tex. Disciplinary Rules Prof'l Conduct R. 3.08(a)(4).

### (2)  Former-Client Conflict — Rule 1.09

Rule 1.09(a) of the Texas Disciplinary Rules of Professional Conduct provides that a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter when that person's interests are materially adverse to the interests of the former client, absent informed consent. Tex. Disciplinary Rules

7

Prof'l Conduct R. 1.09(a). To show that matters are "substantially related," the moving party must establish that the factual matters involved in the prior representation were so related to the facts in the pending litigation that there is a genuine threat that confidences revealed to the lawyer by the former client will be divulged to the lawyer's present adversary. *Cimarron Agric., Ltd. v. Guitar Holding Co.*, 209 S.W.3d 197, 202 (Tex. App.—El Paso 2006, no pet.); *see also In re Fenenbock*, 621 S.W.3d 724, 734 (Tex. App.—El Paso 2020, orig. proceeding) (citing *In re Thetford*, 574 S.W.3d 362, 374 (Tex. 2019) (orig. proceeding)).

## C. Abuse of discretion

### (1) Whether Aguilar is an essential fact witness (Issue 1)

Relators' first issue contends the probate court erred in disqualifying Aguilar because his testimony concerns matters not in dispute, as the warranty deeds unambiguously establish the conveyance from Travis to Judy. Relators argue the warranty clauses are clear and enforceable, and that under the four-corners rule, no extrinsic evidence regarding delivery or intent is necessary. They further argue that Pereira has filed no pleadings contesting the warranty clauses, alleging ambiguity, fraud, or any affirmative defense concerning delivery.

In our first opinion, we held there was "an issue of fact concerning Travis's intent in placing the Deeds within Judy's control." *Farley*, 610 S.W.3d at 518. We explained that Travis's intent must be "determined by examining all the facts and circumstances preceding, attending, and following the execution of the instrument." *Id.* at 517. Evidence of how "Travis's and Judy's personal property had become intermingled" and how "the Deeds were found among Judy's possessions" was relevant to whether Travis "(1) place[d] the deed within the control of [Judy] (2) with the intention that the instrument become operative as a conveyance." *Id.* at 517. We explained that the only two witnesses at trial—an assistant for Travis's former lawyer who drafted and

8

obtained signed copies of the deeds and an administrator of Travis's estate—testified that they did not know how the deeds ended up in Judy's possession. *Id.* at 518.

Aguilar has now disclosed that he personally discovered the deeds, among documents produced in discovery in a case in which he represented both Travis and Judy, and that he discussed the transfer of the property with both. Aguilar does not dispute that he is the most knowledgeable person regarding the circumstances in which the deeds were found. He argued at the motion hearing that he "knows more about the case than any other party including the trial court." He offered an affidavit from the adminstrator of Travis's estate, who stated: "In my opinion the person who knows the most about facts and law of this case is Tony Aguilar." Aguilar also acknowledged, "candidly--and I'm telling the court quite bluntly--I think Mr. Haynes would be a fool to call me as a witness because I know a hell of a lot more than he knows and I can get into it and it's not going to help him any, but he's entitled to call me if he wants." It is undisputed that Aguilar possesses knowledge as to the circumstances of the conveyance and whether Travis intended to place the deeds in Judy's control.

Relators argue that there is no evidence Aguilar will actually be called as a witness, and that neither the Wheatley estate nor Pereira has stated an intention to call him. Rule 3.08 applies when the lawyer "knows or believes" that he or she "is or may be" a necessary witness, not solely when the lawyer has been formally designated as a witness. Tex. Disciplinary Rules Prof'l Conduct R. 3.08(a). Given the nature and extent of Aguilar's personal involvement in the facts underlying the delivery dispute, the probate court reasonably concluded that Aguilar's testimony was likely to be necessary at trial. We conclude it was not an abuse of discretion to disqualify Aguilar on grounds that he was an essential fact witness.

We overrule Relators' first issue.

## (2) Whether Aguilar is a necessary party (Issue 2)

Relators' second issue contends Aguilar cannot be disqualified from representing the Wheatley estate because he is a necessary party under Texas Rule of Civil Procedure 39 and can appear pro se. They point out that the probate court itself indicated it had no concern with Aguilar appearing pro se. Relators reason that because Aguilar might appear pro se and effectively serve as lead counsel, the disqualification serves no purpose. This argument confuses two distinct roles. Rule 3.08(a)(4) permits a lawyer who is a party to the action to appear pro se; it does not permit a party-attorney to simultaneously represent other parties in the same proceeding. The disqualification order prevents Aguilar from serving as Wheatley's attorney. It does not address whether he may appear pro se to protect his own interests in the property, nor does it prevent him from testifying. The probate court expressly recognized this distinction.

Aguilar emphasizes that, as of the time of the disqualification order, he was not permitted to join as a party.[1] Pereira does not dispute this and states that Aguilar is not entitled to join merely because he acquired an interest in the property, since his interest is derived from Judy's estate and Bruce Wheatley, as executor, can adequately represent Aguilar's interests. The question of whether Aguilar is a necessary party under Rule 39 is separate from the question of whether he may represent Wheatley as counsel while also serving as a likely witness. The probate court did not abuse its discretion in disqualifying Aguilar from representing Wheatley notwithstanding his potential status as a pro se party.

We overrule Relators' second issue.

---

[1] Relators state in their petition: "The trial court refuses to join Lianna Wheatley, Tanya Wheatley, and Tony Aguilar. Rather than appeal the issue, the three parties are going to voluntarily appear as parties." Aguilar stated at the motion hearing: "I can turn around if I'm disqualified and interplead myself, Lianna and Tanya. You're not going to get rid of me. I'm going to be in this anyway." The court addressed Aguilar directly from the bench: "I'm not concerned at all with you being in the case, Mr. Aguilar. And that's not my goal to eliminate you from the case."

### (3) Whether invited error is shown (Issue 3)

Relators' third issue contends any disqualifying testimony elicited from Aguilar was invited by Pereira because Pereira's counsel waived the attorney-client privilege and then questioned Aguilar about his prior representation of Travis Kirchner during the December 2024 deposition. Relators characterize the resulting testimony as invited error, citing *Berry v. Segall*, 315 S.W.3d 141, 143–44 (Tex. App.—El Paso 2010, no pet.). They further note that Aguilar did not testify at the first trial in 2018 and did not elect to testify at his deposition. The invited-error doctrine prevents a party from taking advantage on appeal of an error it induced at trial. *See Id*. Relators' invocation of this doctrine is misplaced. The fact that Pereira's counsel learned of Aguilar's personal knowledge of facts during the deposition does not mean Pereira invited him to testify as to those facts as both a witness and advocate at trial. On this record, Relator has not shown a clear abuse of discretion by a misaplication of the law.

We overrule Relators' third issue.

### D. Length of representation and economic hardship (Issues 4 and 5)

Relators' fourth and fifth issues contend the disqualification is an abuse of discretion because Aguilar has represented the Wheatley estate since 2014 and the estate lacks the funds to retain another attorney. In support, Relator Bruce Wheatley submitted an affidavit stating that the estate has no funds to retain another attorney, and no one knows the facts and law of the case better than Aguilar. These are legitimate considerations. Regardless of whether Aguilar violated disciplinary rules, Relators must demonstrate that his conduct caused actual prejudice requiring disqualification. *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d 53, 56 (Tex. 2019) (orig. proceeding). The trial court should weigh this prejudice against the prejudice to Judy's estate including "the financial burden of obtaining substitute counsel that is not already familiar with the case," the

"right to be represented by the counsel of its choice," and "the potential for tactical abuse by the party seeking disqualification." *Id.* These concerns are magnified where, as here, the attorney has represented the party from the start of a twelve-year case. But there is no "bright-line standard" for weighing the prejudice to each side, and the trial court properly considers "all the facts and circumstances to determine 'whether the interests of justice require disqualification.'" *In re Nitla*, 92 S.W.3d at 422; *In re Murrin*, 603 S.W.3d at 56.

Relators do not specify how Judy's estate will be prejudiced by Aguilar's disqualification apart from the fact that the estate has "no assets to retain another attorney." Wheatley states generally in his affidavit that it would be "prejudicial financially" and "from a legal and factual standpoint." Aguilar testified he has been financing the continuation of the case and that he intends to participate regardless of disqualification. The disqualification order states only that Aguilar "cannot act as counsel for the Estate of Judith Wheatley during the same trial in which he will be called as a witness regarding disputed facts that are material in such trial." We do not interpret the order to mean that Aguilar is prohibited from assisting a successor attorney outside of trial or from testifying as a fact witness. Nor is he prevented from assisting the estate if he were permitted to appear as a party. Parties with overlapping interests often enter into agreements delegating different roles at trial such as drafting joint filings. *In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 55 (Tex. 2012) (orig. proceeding). Indeed, the rules authorize the trial judge to limit the ability of parties to present duplicative arguments. Tex. R. Civ. P. 9 ("Not more than two counsel on each side shall be heard on any question or on the trial, except in important cases, and upon special leave of the court."), *id.* Rule 269 ("[W]here there are several parties having separate claims or defenses, the court shall prescribe the order of argument between them."). The probate court expressly considered this possibility in weighing the hardship of the estate against the ethical grounds for

12

disqualification. Based on this record, we conclude that the prejudice to Judy's estate does not outweigh, as a matter of law, the ethical concerns supporting the probate court's ruling such that the ruling amounted to a clear abuse of discretion. Aguilar chose to undertake representation of Judy's estate adverse to his former client Travis's estate; to discover, record, and become personally involved with the deeds; and to acquire a personal one-third interest in the property for the avowed purpose of making himself a party so he could testify about his conversations with Travis. These decisions created the conflicting roles that led to the disqualification. We conclude the probate court did not abuse its discretion in balancing the prejudice to Travis's estate that would result from Aguilar's continued representation, against the economic hardship and practical difficulties faced by Judy's estate in obtaining a substitute attorney at this late date in the proceedings.

We overrule Relators' fourth and fifth issues.

### E. Former-client conflict not reached

Pereira argues that Aguilar's prior representation of Travis presents an independent conflict of interest under Rule 1.09 supporting the trial court's order. In his deposition, Aguilar testified that his conversations with Travis regarding the property were privileged: "as far as I'm concerned that's attorney-client, and I'm not supposed to divulge it to anyone else." Aguilar then proceeded to represent an adverse party, Judy's estate, in litigation involving the subject of the confidential communication; and he disclosed the communication in his own deposition after opposing counsel waived attorney-client privilege. Because Pereira did not assert former-client conflict as a cross-point and because we conclude the probate court did not abuse its discretion in disqualifying

13

Aguilar under the advocate-witness rule, we need not reach the former-client conflict issue.[2] Our holding that Aguilar is an essential fact witness has no bearing on the scope of Aguilar's testimony as to any privileged matters. *See* Tex. R. Evid. 503 (addressing privilege in multiple client situations).

## IV. CONCLUSION

We conclude the record does not establish the probate court clearly abused its discretion in disqualifying Aguilar from representing the Wheatley estate. Relators' petition for writ of mandamus is denied.

GINA M. PALAFOX, Justice

April 22, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

---

[2]We likewise do not reach Pereira's argument that Aguilar lacks standing to challenge his own disqualification. *See* Tex. R. App. P. 47.1. Because Bruce Wheatley, as the client, undisputedly has standing to seek mandamus relief, we need not resolve whether Aguilar independently has standing.